529 S.E.2d 354

STATE of West Virginia ex rel. MICHAEL A.P., Petitioner,

v.

Honorable Lawrance S. MILLER, Jr., Judge of the Circuit Court of Preston County, the West Virginia Department of Health and Human Resources and the Monongalia County Youth Services Center, Respondents.

No. 26851.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 15, 2000.

Decided March 24, 2000.

---

**116**

Virginia Jackson Hopkins, Kingwood, West Virginia, Attorney for the Petitioner.

Melvin C. Snyder III, Prosecuting Attorney for Preston County, Kingwood, West Virginia, Attorney for Respondent, Honorable Lawrance S. Miller.

DAVIS, Justice:

In this original proceeding in prohibition, Michael A.P.,[1] a juvenile, seeks to prohibit the Circuit Court of Preston County, acting in its juvenile court capacity, from enforcing its order of November 18, 1999. By that order, the court disqualified Michael's court-appointed counsel from further representing him due to the appearance of impropriety arising from her former representation of another juvenile who is expected to be called as a witness for the State in the proceedings against Michael. Michael contends that, because the parties concerned have waived any potential conflict of interest, the disqualification order should not be enforced. We hold that the decision whether to disqualify counsel, even when any conflict has been waived, is within the discretion of the trial court. In addition, we conclude that no appropriate grounds for issuing a writ of prohibition were presented in this case. Therefore, the writ is denied.

**I.**

### FACTUAL AND PROCEDURAL HISTORY

On September 27, 1999, the Preston County Prosecutor filed a juvenile delinquency petition against Michael A.P., the petitioner, alleging various offenses including possessing a deadly weapon on school property.[2] Michael, a student, was allegedly found to have brought a knife to school with him. During a preliminary hearing in this matter, Virginia

---

1. "We follow our past practice in domestic and juvenile cases involving sensitive facts and do not use the last names of the parties. *See, e.g., State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 254 n. 1, 470 S.E.2d 205, 208 n. 1 (1996)." *State ex rel. Ohl v. Egnor*, 201 W.Va. 777, 780 n. 1, 500 S.E.2d 890, 893 n. 1 (1997).

2. Pursuant to W. Va.Code § 61–7–11a(b) (1995) (Repl.Vol.1997), this offense would be a felony if committed by an adult:

   (b)(1) It shall be unlawful for any person to possess any firearm or any other deadly weapon on any school bus as defined in section one [§ 17A–1–1], article one, chapter seventeen-a of this code, or in or on any public or private primary or secondary education building, structure, facility or grounds thereof, including any vocational education building, structure, facility or grounds thereof where secondary vocational education programs are conducted or at any school-sponsored function.

   . . . .

   (3) Any person violating this subsection shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary of this state for a definite term of years of not less than two years nor more than ten years, or fined not more than five thousand dollars, or both.

Jackson Hopkins was appointed to represent Michael. In addition, the principal of the school testified at the hearing. He stated that another student, Daniel B., who had also been found to have a knife on school property, alerted him that Michael had a knife at school. Following the preliminary hearing, Michael was placed in the legal custody of the West Virginia Department of Health and Human Resources and, and in the physical custody of the Monongalia County Youth Services Center.

Subsequent to Michael's preliminary hearing, Ms. Hopkins was appointed to represent Daniel B. in connection with charges against him for having a knife on school property. However, at a preliminary hearing on the charges against Daniel, the assistant prosecuting attorney moved that Ms. Hopkins be disqualified due to the conflicting interests of the two boys, who were both being represented by Ms. Hopkins. Although Ms. Hopkins objected to being disqualified, the circuit court granted the prosecutor's motion and appointed other counsel for Daniel.

Meanwhile, in Michael's case, Ms. Hopkins requested a trial by jury and further asked that Michael be released to the custody of his father. Sometime after these requests were made, the prosecuting attorney filed a motion to disqualify Ms. Hopkins from representing Michael. The prosecutor asserted that during Ms. Hopkins' representation of Daniel, she was believed to have discussed with him the facts relating to Michael. Furthermore, the prosecutor stated that Daniel was expected to testify at the adjudicatory hearing in Michael's case. The prosecutor argued that

Ms. Hopkins' examination of Daniel at Michael's adjudicatory hearing would create an actual conflict, or at least the appearance of impropriety. Ms. Hopkins resisted being disqualified. She asserted that there was no actual conflict as the boys gave corresponding accounts of the relevant events.[3] She also reported that the juveniles and their parents had waived any potential conflict, though she presented the court with no evidence demonstrating this fact.[4] After conducting a hearing on the motion to disqualify, the circuit court entered an order finding Ms. Hopkins was disqualified from further representing Michael. In its order, the court explained:

> [I]t may create the appearance of impropriety for Ms. Hopkins to continue representation of the Juvenile Respondent. In particular, there is a likelihood that Ms. Hopkins will cross examine, Daniel [B.], another Juvenile Respondent, who she previously represented, about matters related to this case which she discussed with him while she represented him.

Michael, through Ms. Hopkins, then filed a petition for writ of prohibition in this Court seeking to prohibit the circuit court from disqualifying Ms. Hopkins as his counsel.[5] We granted a rule to show cause. We now deny the writ of prohibition.

## II.

### STANDARD FOR WRIT OF PROHIBITION

Expressing the limits to our exercise of original jurisdiction in prohibition, we

---

3. Notwithstanding Ms. Hopkins' assertion that there are no factual discrepancies between the boys' descriptions of the relevant events, the prosecutor indicated, during the hearing on his motion to disqualify, that Michael's defense may be that he inadvertently had the knife with him at school that day and was unaware of its presence. (Indeed, Ms. Hopkins, in her petition before this Court, states "the school learned that Michael [A.P.] *inadvertently* brought a knife to school." (emphasis added)). Thus, the prosecutor asserted that the fact Daniel knew Michael had the knife is contrary to such a defense.

4. Subsequent to the hearing on the prosecutor's motion to disqualify, Ms. Hopkins obtained written waivers from Michael A.P. and his father, and Daniel B. and his mother.

5. The petition filed by Ms. Hopkins in this case also requested a writ of habeas corpus ad subjiciendum to be directed to the West Virginia Department of Health and Human Resources and the Monongalia County Youth Services Center. This Court issued a rule in habeas corpus returnable before the Honorable Lawrance S. Miller, Jr., on November 23, 1999, for the purpose of holding a hearing to determine the suitability of Michael's father to have custody of him pending adjudication of the underlying matter. Following the hearing of November 23, by order entered November 24, 1999, Judge Miller released Michael to the custody of his father.

have frequently explained that " '[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va.Code*, 53–1–1.' Syllabus .point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syl. pt. 1, *State ex rel. Sims v. Perry*, 204 W.Va. 625, 515 S.E.2d 582 (1999). As the disqualification of counsel is clearly within a trial court's jurisdiction,[6] prohibition will lie in this case only if it can be demonstrated that the court exceeded its legitimate powers.

"In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

Syl. pt. 1, *State ex rel. Youth Servs. Sys., Inc. v. Wilson*, 204 W.Va. 637, 515 S.E.2d 594

(1999). Having reviewed these standards, we now discuss the petition that is before us.

## III.

## DISCUSSION

In support of this petition, counsel for Michael argues only that she had obtained waivers that comport with Rule 1.7 of the West Virginia Rules of Professional Conduct and that a "conflict charged by an opposing party is to be viewed with caution." Citing *State ex rel. Taylor Assocs. v. Nuzum*, 175 W.Va. 19, 23, 330 S.E.2d 677, 681–82 (1985). Counsel was silent with regard to whether the extraordinary remedy of prohibition is appropriate in this instance. However, this threshold issue must be resolved before we may address the substantive issue asserted.

■ On the question of a circuit court's authority to disqualify a lawyer upon the motion of a party, we have previously held:

"A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, *may* disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship." Syl. Pt. 1, *Garlow v. Zakaib*, 186 W.Va. 457, 413 S.E.2d 112 (1991).

Syl. pt. 2, *Musick v. Musick*, 192 W.Va. 527, 453 S.E.2d 361 (1994) (emphasis added). In this syllabus point, we used the word "may," thereby indicating that the decision whether to grant or deny a motion to disqualify is within the trial court's discretion. "The word 'may' generally signifies permission and connotes discretion." *State v. Hedrick*, 204 W.Va. 547, 552, 514 S.E.2d 397, 402 (1999) (citations omitted). *See also Powers v. Union Drilling, Inc.*, 194 W.Va. 782, 786, 461

---

**6.** *See, e.g.,* Syl. pt. 2, *Musick v. Musick*, 192 W.Va. 527, 453 S.E.2d 361 (1994) (" 'A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where

the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.' Syl. Pt. 1, *Garlow v. Zakaib*, 186 W.Va. 457, 413 S.E.2d 112 (1991).'').

S.E.2d 844, 848 (1995) (stating "[t]he legislators' choice of the term 'may' ... was intended to operate in a discretionary, rather than an obligatory, manner"); *Weimer–Godwin v. Board of Educ. of Upshur County,* 179 W.Va. 423, 427, 369 S.E.2d 726, 730 (1988) ("The word 'may' generally should be read as conferring both permission and power."); *Hodge v. Ginsberg,* 172 W.Va. 17, 22, 303 S.E.2d 245, 250 (1983) ("We agree with the respondent that the use of the word 'may' in a statute often indicates discretion.").

Various other jurisdictions have similarly recognized that the ultimate decision of whether to disqualify a lawyer is left to the discretion of the trial judge.[7] *See Wheat v. United States,* 486 U.S. 153, 164, 108 S.Ct. 1692, 1700, 100 L.Ed.2d 140, 152 (1988) ("The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court."); *United States v. Williams,* 81 F.3d 1321, 1325 (4th Cir.1996) (determining that "disqualification of [the defendant's] counsel was well within the district court's discretion"); *United States v. Koon,* 34 F.3d 1416, 1436–37 (9th Cir.1994) (commenting that a district court's disqualification of a lawyer is reviewed for an abuse of discretion), *aff'd in part rev'd in part,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Fulton,* 5 F.3d 605, 614 (2d Cir.1993) (recognizing that "district courts have broad latitude in making a decision whether to disqualify a defendant's chosen counsel"); *Grahams Serv. Inc. v. Teamsters Local 975,* 700 F.2d 420, 423 (8th Cir.1982) ("The decision whether to disqualify counsel rests in the sound discretion of the district court, and its decision will not be overturned absent a showing of a clear abuse of discretion." (footnote omitted)); *Oxford Sys., Inc. v. CellPro, Inc.,* 45 F.Supp.2d 1055, 1066 (W.D.Wash.1999) ("In determining whether to exercise discretion to disqualify counsel, the court has several obligations."); *In re Klein,* 119 B.R. 971, 979 (N.D.Ill.1990) ("[A] trial court has broad discretion in determining whether an attorney should be disqualified." (citation omitted)); *Lee v. Todd,* 555

F.Supp. 628, 630 (W.D.Tenn.1982) (stating, in the context of a motion to disqualify plaintiff's lawyer due to a conflict of interest, that "[i]n exercising its supervisory powers over lawyers appearing before it, this Court has broad discretion to determine who will practice before it and to monitor the conduct of those who do" (citation omitted)); *Shadow Traffic Network v. Superior Court,* 24 Cal. App.4th 1067, 1088, 29 Cal.Rptr.2d 693, 705 (1994) (concluding that trial court "did not abuse its discretion" in disqualifying entire law firm from representing a defendant in a civil action); *Bergeron v. Mackler,* 225 Conn. 391, 397, 623 A.2d 489, 493 (1993) ("The trial court has broad discretion to determine whether there exists a conflict of interest that would warrant disqualification of an attorney." (citation omitted)); *Serody v. Serody,* 19 Mass.App.Ct. 411, 415, 474 N.E.2d 1171, 1174 (1985) (observing, in a case involving a lower court's sua sponte disqualification of a defendant's lawyer, that "[s]izing up the potential for prejudice in a particular case and the degree of that prejudice involves exercise of discretion by the trial judge"); *Sanders v. Rosenberg,* 122 N.M. 692, 694, 930 P.2d 1144, 1146 (1996) (applying discretionary standard pursuant to a "best interests of the children" rule, but observing that "a number of courts have held that '[a] trial court has broad discretion in determining whether disqualification is required in a given case,' ... [and] any doubts should be resolved in favor of disqualification" (citations omitted)); *Ross v. Ross,* 94 Ohio App.3d 123, 132, 640 N.E.2d 265, 271 (1994) (concluding that trial court's disqualification of lawyer without conducting a hearing and without considering exceptions to applicable disciplinary rule constituted "an abuse of discretion"); *State ex rel. Macy v. Owens,* 934 P.2d 343, 345 (Okla.Crim.App.1997) (mem.) ("Although the decision on disqualification is discretionary, the ability to make such a decision must be authorized by law."); *Harter v. Plains Ins. Co., Inc.,* 579 N.W.2d 625, 632 (S.D.1998) (reviewing lower court's denial of motion to disqualify lawyer and name him as a witness,

---

**7.** While the standards for lawyer disqualification applied by these courts may vary, they all agree that the ultimate decision is within the trial court's discretion upon its application of the proper criteria.

and concluding that appellant failed to show that lower court abused its discretion); *In re Meador*, 968 S.W.2d 346, 351 (Tex.1998) ("In sum, the trial court ... must consider all the facts and circumstances to determine whether the interests of justice require disqualification. In this exercise of judicial discretion, a trial court should consider [various factors].").

■ In the instant case, Michael's counsel asserts that the interested parties waived any conflict. However, the existence of such a waiver does not necessarily deprive the circuit court of its discretion to decide issues of lawyer disqualification. The United States Supreme Court has recognized that

> the [trial] court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Wheat v. United States*, 486 U.S. at 163, 108 S.Ct. at 1699, 100 L.Ed.2d at 151. This discretionary standard arises from a trial court's duty to assure that criminal defendants receive fair trials, *State ex rel. Owens v. Brown*, 177 W.Va. 225, 351 S.E.2d 412 (1986),[8] which must be balanced with a defendant's right to counsel of his or her own choice. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158, 162 (1932) ("[A] defendant should be afforded a fair opportunity to secure counsel of his [or her] own choice."). One court has aptly described the basis for this discretionary standard by explaining:

> "[T]he trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver." ... The

tension between protecting the institutional legitimacy of judicial proceedings, which includes a concern to shield a defendant from having his defense compromised by an attorney with divided loyalties, and allowing a defendant to be represented by the attorney of his choice, creates the disqualification issue. Thus, a district court has discretion to disqualify counsel if a potential conflict exists, ... even where the represented parties have waived the conflict.

*United States v. Stewart*, 185 F.3d 112, 122 (3d Cir.1999) (citations omitted), *cert. denied*, 528 U.S. 1063, 120 S.Ct. 618, 145 L.Ed.2d 512 (1999).

For similar reasons, numerous courts have concluded that a trial court has discretion to disqualify a lawyer even where the defendant has waived a conflict or potential conflict. *See United States v. Mays*, 69 F.3d 116, 122 (6th Cir.1995) ("A district court, in certain situations, can disqualify an attorney despite a defendant's voluntary, knowing, and intelligent waiver of his constitutional right to conflict-free counsel at a hearing." (citation omitted)); *United States v. Childress*, 58 F.3d 693, 734 (D.C.Cir.1995) (per curiam) (recognizing that a district court's "decision to reject [a defendant's] waiver of the right to conflict-free counsel is reviewed for an abuse of discretion" (citation omitted)); *United States v. Fulton*, 5 F.3d 605, 612 (2d Cir.1993) ("When a lawyer's conflict, actual or potential, may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an attorney or decline a proffer of waiver." (citations omitted)); *United States v. Patrick*, 985 F.Supp. 543, 553 (E.D.Pa.1997) ("This question—whether the court should accept a defendant's waiver—is vested in the sound discretion of the trial court, and the trial court is

---

8. In *Brown*, this Court recognized that a court has an affirmative duty to ensure a fair trial, and that the duty runs primarily to the benefit of the defendant. 177 W.Va. at 228, 351 S.E.2d at 414. *See also Wheat*, 486 U.S. at 160, 108 S.Ct. at 1698, 100 L.Ed.2d at 149 ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."); *State v. Moss*, 180 W.Va. 363, 368, 376 S.E.2d 569, 574 (1988) ("[T]he trial court has a duty to independently protect the accused's right to a fair trial free from improper remarks by the prosecuting attorney.").

given 'substantial latitude' in determining whether to disqualify an attorney." (citation omitted)), *aff'd*, 156 F.3d 1226 (3d Cir.1998); *Kolker v. State*, 649 So.2d 250, 252 (Fla.Dist. Ct.App.1994) (observing that a waiver " 'does not necessarily resolve the matter, for the trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver' " (citation omitted)); *Hanna v. State*, 714 N.E.2d 1162, 1166 (Ind.Ct. App.1999) ("The State correctly notes that the trial court has an interest in assuring a fair trial despite a defendant's waiver of the right to conflict-free counsel and thus has some discretion to decline to accept a defendant's waiver."); *State v. Dillman*, 70 Ohio App.3d 616, 621, 591 N.E.2d 849, 852 (1990) (per curiam) ("[A] trial court may, in its discretion, refuse the proffered waiver and disqualify counsel." (citations omitted)); *State v. Cobbs*, 221 Wis.2d 101, 105–06, 584 N.W.2d 709, 711 (1998) ("Once satisfied that [a] defendant has made a voluntary and knowing waiver of a conflict of interest, the trial court may permit counsel's continued representation, ... or in its discretion, a court may disqualify an accused's chosen counsel when there is an actual conflict or a serious potential conflict of interest...." (citations omitted)).[9]

Furthermore, we have held that an indigent defendant is not entitled to be represented by a particular lawyer. Syl. pt. 2, in part, *Watson v. Black*, 161 W.Va. 46, 239 S.E.2d 664 (1977) ("While an indigent defendant is entitled to competent counsel, he is not entitled to the appointment of any particular lawyer...."). *See also Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697, 100 L.Ed.2d at 148 ("[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." (citations omitted)).

Finally, we find that a discretionary standard is particularly relevant where a juvenile has executed a waiver of conflict. Juveniles, who are necessarily of tender years and limited experience, may be unable to fully understand all the implications of, and the consequences that may flow from, such a waiver. Thus, it is exceptionally difficult for a juvenile to knowingly and intelligently waive his or her constitutional right to a conflict-free lawyer. In such circumstances, it is crucial that the trial court exercise its discretion to assure that the juvenile receives a fair trial.

▪ For the foregoing reasons, we hold that in a juvenile proceeding, the decision whether to grant or deny a motion to disqualify a lawyer due to a conflict of interest is within the sound discretion of the circuit

9. While these cited cases involve adult criminal actions rather than juvenile cases, the principle of law is applicable to both. *See* W. Va.Code § 49–5–2(j) (1998) (Repl.Vol.1999) ("At all adjudicatory hearings held under this article, all procedural rights afforded to adults in criminal proceedings shall be afforded the juvenile unless specifically provided otherwise in this chapter."). It is for public policy reasons that we typically do not associate adult criminal prosecutions with juvenile delinquency proceedings. *See* W. Va. Code § 49–7–3 (1941) (Repl.Vol.1999) ("Any evidence given in any cause or proceeding under this chapter, or any order, judgment or finding therein, or any adjudication upon the status of juvenile delinquent heretofore made or rendered, shall not in any civil, criminal or other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatsoever except in subsequent cases under this chapter involving the same child; ... *nor shall any such adjudication upon the status of*

*any child by a juvenile court operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction, nor shall any such adjudication operate to disqualify a child in any future civil service examination, appointment, or application.*" (emphasis added)). *But see* Syl. pt. 2, *State ex rel. Daily Mail Publ'g Co. v. Smith*, 161 W.Va. 684, 248 S.E.2d 269 (1978) ("To the extent that *W. Va.Code*, 49–7–3 [1941] makes it a criminal offense for a newspaper to publish the name of a child in any proceeding under Chapter 49 of the *W. Va.Code*, without the prior approval of the trial court, *W. Va.Code*, 49–7–3 [1941] is unconstitutional as repugnant to the First Amendment to the *Constitution of the United States* because it creates an impermissible prior restraint on the freedom of the press."), *aff'd*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979).

court, even where the interested parties have waived any conflict.[10]

As we previously noted, " '[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va.Code*, 53–1–1.' Syllabus point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syl. pt. 1, *State ex rel. Sims v. Perry*, 204 W.Va. 625, 515 S.E.2d 582 (1999). At best, Michael's argument that a "conflict charged by an opposing party is to be viewed with caution" may be interpreted as asserting an abuse of discretion. There is nothing in the meager petition submitted in this case asserting that any of the five factors set forth in *Hoover v. Berger* are satisfied, and no memorandum of law accompanied the petition.[11] Moreover, "[m]andamus, prohibition and injunction against judges are drastic and extraordinary remedies.... As extraordinary remedies, they are reserved for really extraordinary causes." *State ex rel. Lawson v. Wilkes*, 202 W.Va. 34, 38, 501 S.E.2d 470,

474 (1998) (quoting *State ex rel. Suriano v. Gaughan*, 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996)). Accord *State ex rel. United States Fidelity & Guar. Co. v. Canady*, 194 W.Va. 431, 436, 460 S.E.2d 677, 682 (1995); *State ex rel. Doe v. Troisi*, 194 W.Va. 28, 31, 459 S.E.2d 139, 142 (1995). Because we have been presented with no appropriate grounds for issuing a writ of prohibition, the writ is denied.

## IV.

## CONCLUSION

For the foregoing reasons, the writ of prohibition is denied.

Writ denied.

---

**10.** While we hold that the decision is within the court's discretion, we decline to herein set forth guidelines for the court's exercise of that discretion. We leave that question for a more appropriate case.

**11.** Under Rule 14 of the West Virginia Rules of Appellate Procedure:

A petition for writ of mandamus, prohibition, habeas corpus, or certiorari under the original jurisdiction of the Supreme Court *shall* be filed in the office of the Clerk thereof, together with (1) an attached addendum or separate appendix of any exhibits or affidavits, (2) *a memorandum of law citing the relevant authorities*, and (3) a memorandum listing the names and addresses of those persons upon whom the rule to show cause is to be served, if granted.

(Emphasis added). Once again, we admonish the bar that " '[a] skeletal "argument", really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs.' " *Mayhew v. Mayhew*, 205 W.Va. 490, 503 n. 35, 519 S.E.2d 188, 201 n. 35 (1999) (citation omitted). *See also Clain–Stefanelli v. Thompson*, 199 W.Va. 590, 593 n. 1, 486 S.E.2d 330, 333 n. 1 (1997) (same); *State Dep't of Health & Human Resources v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (same (citing *Teague v. Bakker*, 35 F.3d 978, 985 n. 5 (4th Cir.1994); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *State v. Honaker*, 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994))).