**FILED**
**May 28, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-1160 - *State of West Virginia ex rel. June Yurish, Kristin Douty and Christina Lester v. The Honorable Laura Faircloth, Judge of the Circuit Court of Berkeley County*

Justice Workman, dissenting:

Because there is no actual or apparent conflict of interest on the part of defense counsel in this case, and nothing in the record to suggest that counsel's joint representation of the petitioners would "call in question the fair or efficient administration of justice," Syl. Pt. 2, in part, *State ex rel. Blake v. Hatcher*, 218 W. Va. 407, 624 S.E.2d 844 (2005), the circuit court's disqualification order unlawfully deprived the petitioners of their Sixth Amendment right to retained counsel of their choice. Accordingly, I would grant the writ.

I agree with the majority that as a general rule,

> [a] circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice.

Syl. Pt. 1, in part, *Garlow v. Zakaib*, 186 W. Va. 457, 413 S.E.2d 112 (1991). Accordingly, this Court has properly concluded that in cases where defense counsel has an evident or actual conflict of interest, the trial court has wide latitude in determining whether a

1

defendant's interest in effective representation of counsel overrides his or her interest in representation by a particular lawyer. *See, e.g., State ex rel. Blake v. Hatcher*, 218 W. Va. 407, 417, 624 S.E.2d 844, 854 (2005) (where defense counsel had previously represented State's witness, as well as members of witness's family, court is required to hold a hearing to determine "whether a conflict of interest should overcome the presumption in favor of defendant's choice of counsel"); *State ex rel. Michael A.P. v. Miller*, 207 W. Va. 114, 116-17, 529 S.E.2d 354, 356-57 (2000) (attorney's representation of two juveniles created actual conflict of interest where one juvenile was expected to be a witness against the other); *State v. Livingston*, 179 W. Va. 206, 208-09, 366 S.E.2d 654, 656-57 (1988) (clients' interests were not compatible and record contained no evidence that they had waived any conflict of interest on attorney's part); *Cole v. White*, 180 W. Va. 393, 399, 376 S.E.2d 599, 605 (1988) (attorney's conflict of interest resulted in his inability to effectively present evidence and cross examine witnesses); *State v. Reedy*, 177 W. Va. 406, 411-12, 352 S.E.2d 158, 163-64 (1986) (attorney's conflict of interest not revealed to his client prior to trial).

> This wide latitude, however, is tempered by our admonition that,

> [t]he joint representation by counsel of two or more accused, jointly indicted and tried is not improper *per se*; and, one who claims ineffective assistance of counsel by reason of conflict of interest in the joint representation must demonstrate that the conflict is actual and not merely theoretical or speculative.

Syl. Pt. 3, *State ex rel. Postelwaite v. Bechtold*, 158 W. Va. 479, 212 S.E.2d 69 (1975); *see also State v. Mullins*, 181 W. Va. 415, 422, 383 S.E.2d 47, 54 (1989) (where both defendants had alibi defenses, "their interests were more compatible as opposed to conflicting" and counsel did not have an actual conflict of interest); *State v. Haddix*, 180 W. Va. 71, 74, 375 S.E.2d 435, 437-38 (1988) ("[c]onjecture and surmise will not suffice to brand counsel, appointed or retained, ineffective in the representation of one accused of crime") (citing *Postelwaite*, 158 W. Va. at 489, 212 S.E.2d at 75)).

In the instant case, the sole ground on which the State moved to disqualify defense counsel was that he would not be able to advise his clients as to the existence of, or the desirability of, any proffered plea agreements. Under the facts and circumstances of this case, the State's argument was woefully insufficient to raise a legitimate concern about the adequacy of counsel's representation and, thus, to overcome the petitioners' Sixth Amendment right to select counsel of their choice. In this regard, the United States Supreme Court has held that "[w]e have little trouble concluding that erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error."'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1992)); *see also Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) ("the constitutional right at issue here is fundamental: '[T]he sixth Amendment guarantees a defendant the right

to be represented by an otherwise qualified attorney whom that defendant can afford to hire.'") (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)).[1]

First, it is troubling that the majority glosses over the critical fact that the circuit court did not find the existence of an actual conflict of interest on counsel's part, despite the State's effort to create one.[2] In this regard, the circuit court specifically concluded that "there is not an actual conflict of interest at this early stage in the proceedings of discovery but [the court] does believe that sufficient argument and information has been provided to the Court that the Court can and does find that there is a significant potential for a serious conflict of interest."[3] (Emphasis added.) This belief, in turn, was based on the State's representation that "it *may* be willing to make different

---

[1] Although this Court has never had occasion to discuss this issue in length, we have recognized that not only the Sixth Amendment to the United States Constitution but also article III, § 14 of the West Virginia Constitution guarantees an accused the right to counsel of his or her choice, within certain constraints. *State v. Heater*, 237 W. Va. 638, 647, 790 S.E.2d 49, 58 (2016); *cf. Watson v. Black*, 161 W. Va. 46, 51, 239 S.E.2d 664, 667 (1977) (acknowledging that defendant's right to retain counsel of his or her choice is "absolute").

[2] The State sent identical plea offers to each petitioner one day after defense counsel had refused to disqualify himself and before the petitioners had even been arraigned – suspect timing, to say the least. Further, no one with any experience in the prosecution or defense of criminal cases would consider these offers to be genuine attempts to come to an agreement. The offers required the petitioners to plead guilty and testify against their codefendants, in return for which they would "have the opportunity to inform the Court that [they] accepted responsibility and fully cooperated with the state." Indeed, the circuit court apparently did not consider these plea offers to be "real," inasmuch as the court did not find them sufficient to create an actual conflict of interest on the part of defense counsel.

[3] *See* transcript of hearing, November 18, 2019, pp. 26-27 (emphasis added).

cooperation plea offers from those already made."[4]  In short, the court accepted the State's invitation to "brand counsel" based on nothing other than conjecture and surmise -- specifically, conjecture and surmise that the State *might* be willing at some time in the future to propose a better plea deal that *might* be in one of the petitioners' best interests to accept.  *Postelwaite*, 158 W. Va. at 489, 212 S.E.2d at 75.

Second, disqualification of counsel based on the mere possibility that the State might, in the future, offer a plea bargain to one or more of the petitioners, will effectively eliminate joint representation of defendants in a criminal case, because the possibility exists in every case that the State could offer a plea deal.  In this regard, although no one can deny that joint representation entails very real risks that must be evaluated by the attorney, the client, and the court, Rules 1.7(a) & (b) of the West Virginia Rules of Professional Responsibility, the State's interest in plea bargaining does not implicate the "institutional interest in protecting the truth-seeking function of the proceedings . . . the institutional legitimacy of judicial proceedings . . . [or] a concern to shield a defendant from having his defense compromised by an attorney with divided loyalties." *Michael A.P.*, 207 W. Va. at 120, 529 S.E.2d at 360 (internal citation omitted); *see also* Syl. Pt. 2, in part, *Blake*, 218 W. Va. at 409, 624 S.E.2d at 846 (disqualification of lawyer for conflict of interest proper only "where the conflict is such as clearly to call in question the fair or

---

[4] *See* State's Reply to Defendant's [sic] Response to the State's Motion to Disqualify Defense Counsel, November 14, 2019, p. 6 (emphasis added).

efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship."). Rather, the State has one of two interests in extending a plea offer: a plea agreement, if accepted, can obviate the necessity of proving the defendant's guilt beyond a reasonable doubt to a jury, or, in a multi-defendant case, a plea agreement with one defendant can strengthen the State's case against the remaining defendant or defendants. A defendant, on the other hand, has one and only one interest in accepting a plea offer: eliminating or at least reducing the severity of the sentence. In short, although both sides in a criminal case have very real interests in the possibility of a plea bargain, those interests are not sufficient to warrant interference with a defendant's constitutionally protected right to be represented by a retained lawyer of his or her own choosing.

Third, while this Court has held that "[t]he failure of defense counsel to communicate any and all plea bargain proposals to the defendant constitutes ineffective assistance of counsel, absent extenuating circumstances,"[5] we have *never* held that an adult defendant,[6] being fully apprised of the consequences of his or her actions, cannot waive that right. *See, e.g.*, *Montgomery v. Ames*, 241 W. Va. 615, 625, 827 S.E.2d 403, 413 (2019)

---

[5] *See* Syl. Pt. 3, in part, *Becton v. Hun*, 205 W. Va. 139, 144, 516 S.E.2d 762, 767 (1999).

[6] In *Michael A.P.*, where the juvenile defendant had executed a waiver of his counsel's conflict of interest, we noted that "[j]uveniles, who are necessarily of tender years and limited experience, may be unable to fully understand all the implications of, and the consequences that may flow from, such a waiver." 207 W. Va. at 121, 529 S.E.2d at 361.

("An accused may waive sundry constitutional rights and privileges, if he or she does so intelligently and voluntarily.") In the instant case not only did each petitioner sign a detailed waiver, but also the circuit court held a W. Va. R. Crim. P. 44(c)[7] colloquy with each, with detailed explanations and warnings concerning the perils of joint representation. The following is representative of the probing nature of the colloquies held with each of the three petitioners:

> THE COURT: Do you understand that the state is always allowed to offer a plea to any defendant and may choose to offer a plea to any one of you for example but not by way [of] limitation in exchange for cooperation against the other defendants specifically for example in this case about any intent or reason that certain conduct did or did not occur?
>
> DEFENDANT DOUTY: Yes.
>
> THE COURT: Do you understand that you may desire at some point in the process to speak with the state about a plea and are being advised by your attorney that he may need to withdraw from representing all of you because of that request?
>
> DEFENDANT DOUTY: Yes.

---

[7]Rule 44(c) of the West Virginia Rules of Criminal Procedure provides:

> *Joint representation*. – Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

> THE COURT: And finally are you sure that there can be no set of circumstances that may arise that would cause a conflict for your attorney to represent all three of you?
>
> DEFENDANT DOUTY: Yes, there's not any conflict.
>
> THE COURT: And you're sure moving forward in the future there would never be one?
>
> DEFENDANT DOUTY: No ma'am.[8]

Finally, it should be noted that if the legal landscape in this case were to change in the future, and an actual conflict of interest were to arise, then our system of justice must rely upon the integrity of counsel to do what he specifically assured the circuit court he would do:

> [A]t the moment that one of [the defendants] comes to me with information that I feel like using or not using will hurt them and help their codefendants I think I have a conflict that would probably cause me to have to withdraw but at this point each one of them has a right to have their chosen defense counsel.[9]

Although a late-stage withdrawal of defense counsel under such circumstances could result in some inconvenience to the court, *i.e.*, the necessity of rescheduling deadlines, hearing dates and/or even a trial date, there can be no principled argument that possible inconvenience to the court in the future is sufficient to overcome the petitioners' Sixth Amendment rights in the here and now.

---

[8] Transcript of December 10, 2019, Hearing, p. 6.
[9] Transcript of November 18, 2019, Hearing, p. 13.

In summary, the circuit court's order disqualifying defense counsel deprived the petitioners of their Sixth Amendment right to retained counsel of their choice – a choice they made in full appreciation of all relevant facts and circumstances, and with full knowledge of the attendant risks.  Accordingly, I respectfully dissent.