# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 23, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CLAUDIA N.,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-82 and 24-ICA-83**     **(**Fam. Ct. Harrison Cnty. Case No. FC-17-2022-D-141)

**FRANK N.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

In this consolidated appeal, Petitioner Claudia N.[1] appeals the Family Court of Harrison County's January 31, 2024, orders denying her petition for the modification of custody and child support and dismissing her petition for contempt. Respondent Frank N. filed a summary response in support of the family court's decision.[2] Claudia N. filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Claudia N. ("Mother") and Respondent Frank N. ("Father") were married on May 22, 2010, and separated on May 6, 2022. One child was born of the marriage, P.N., born in 2017. Per the divorce order, entered on January 3, 2023, the parties agreed to a 2/2/3 parenting plan with shared decision-making and Mother was ordered to pay Father $205.63 per month in child support.[3]

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Claudia N. is represented by Shannon R. Thomas, Esq. Frank N. is represented by Julie N. Garvin, Esq.

[3] A 2/2/3 parenting plan refers to an equal (50-50) custodial allocation in which the child alternates parenting time between the mother and the father every two or three days.

1

On or about October 11, 2023, Mother filed a petition for the modification of custody and child support and a petition for contempt. On or about October 23, 2023, Julie N. Garvin, Esq. ("Attorney Garvin") filed a notice of appearance to represent Father. Mother informed her counsel that she had previously consulted with Attorney Garvin about custody. Mother's counsel notified Attorney Garvin, who concluded that she did not have a conflict of interest in representing Father. Mother then filed a motion to disqualify Attorney Garvin. A hearing on the motion to disqualify was held on December 13, 2023, and the family court ruled that there was no prohibited conflict of interest.[4] On December 15, 2023, the family court entered an order holding that Attorney Garvin was not disqualified from representing Father. A hearing on both of Mother's petitions was scheduled for January 29, 2024.

Prior to the hearing on Mother's petitions, the parties advised the family court that three hours would be needed to complete their respective cases-in-chief. Accordingly, the family court allotted a three-hour time slot for the hearing. However, approximately one week prior to the hearing, Mother's counsel was informed that the family court had scheduled her for another hearing during the same time as the present matter with another family court judge. Upon consulting with the court about the conflict, Mother's counsel was informed that the family court judge for this case would take a break to allow her to complete the other hearing. Unknown to Mother's counsel, the hearing for this matter was reduced from three hours to two hours, which allegedly caused Mother's counsel to rush through her case-in-chief.

At the hearing on January 29, 2024, regarding the modification, Mother alleged that a substantial change in circumstances had occurred because Father: (1) made false allegations and inappropriate remarks about her to the child; (2) refused to exercise his

---

[4] During the December 13, 2023, hearing Attorney Garvin confirmed that Mother called her law office on Monday, August 1, 2022, but Attorney Garvin did not return her call. On August 6, 2022, Attorney Garvin received a text message from a friend requesting that she call Mother back, which she did. During that phone call, Mother explained that she was unhappy with her current counsel. Attorney Garvin encouraged Mother to discuss her concerns with her then-counsel and advised that, once she released her original attorney, she could call Attorney Garvin back, although there was no guarantee she would take the case. Mother ended representation by her original lawyer and called Attorney Garvin's office twice—on December 12, 2022, and December 14, 2022. Attorney Garvin called Mother back but was unable to reach her. The two never spoke after that. Attorney Garvin testified that she had one short phone call with Mother, during which minimal information about the case was discussed due to Mother already having counsel. There were no consultation meetings, emails, text messages, contracts, or further forms of communication. Attorney Garvin expressed that she had no recollection of Mother and further testified that she contacted the Lawyer Disciplinary Board to obtain an unofficial opinion on this matter.

parenting time on three occasions; (3) failed to ensure that Mother received school information that was sent home with the child during his parenting time; (4) missed a school party for which he volunteered; (5) forgot to pick the child up from daycare once; and (6) forgot to send the child's bathing suit to daycare once. Mother also presented 122 printed pages of AppClose messages, but the family court only reviewed the messages that Mother specifically pointed out.

The family court entered its order denying Mother's petition for modification on January 31, 2024, finding that: (1) Mother's testimony regarding false allegations and inappropriate remarks to the child was uncorroborated and self-serving; (2) Father's failure to exercise parenting time was in the child's best interest all three times;[5] (3) Mother failed to prove by a preponderance of the evidence that Father withheld school information; (4) there was no proof that Father purposely missed the child's school party; and (5) Father's failure to pick the child up once and bring her bathing suit once were isolated events. The family court held that there had not been a substantial change in circumstances which would warrant a modification, as the evidence did not support a finding that the current parenting plan was not working as contemplated and the parties' difficulty in co-parenting was anticipated. Although the family court denied Mother's petition for modification, two alterations were made to the parenting plan—the parties were required to communicate only using AppClose and any adults present during parenting exchanges were required to remain in the car.

Regarding Mother's petition for contempt, Mother argued during the hearing that Father missed his parenting time on three occasions, spoke poorly about Mother in the child's presence, and refused to properly communicate through AppClose. The family court dismissed Mother's petition for contempt by order entered January 31, 2024, holding that Mother's testimony was self-serving and uncorroborated, and Father's missed parenting time was in the child's best interest all three times. As for Father's refusal to use AppClose, the family court was unable to make a finding of contempt because the original parenting plan did not *require* the parties to use AppClose but merely noted that AppClose would be their primary means of communication. It is from the January 31, 2024, orders that Mother now appeals.

We apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family

---

[5] Father declined to exercise his parenting time once when he had COVID-19, a second time when he had a gastrointestinal illness, and a third time when the child was sick and preferred to be with Mother.

court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Mother raises three assignments of error on appeal. First, she asserts that the family court erroneously denied her petition for modification. On this issue, she contends that the court failed to consider her evidence and testimony showing that a substantial change in circumstances had occurred and failed to find that the parenting plan was not working as contemplated and that it was manifestly harmful to the child. We disagree.

West Virginia Code § 48-9-401(a)-(b) (2022) provides that:

(a) Except as provided in § 48-9-402 or § 48-9-403 of this code, a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated in the prior order, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

(b) In exceptional circumstances, a court may modify a parenting plan if it finds that the plan is not working as contemplated and in some specific way is manifestly harmful to the child, even if a substantial change of circumstances has not occurred.

Moreover, as the Supreme Court of Appeals of West Virginia ("SCAWV") has explained,

[West Virginia Code § 48-9-401(a)] establishes three criteria for change-in-circumstances modifications. *First*, the facts relevant to the change in circumstances must not have been "known" or "anticipated" in the order that established the parenting plan. *Ibid. Second*, the change in circumstances, whether "of the child or of one or both parents[,]" must be "substantial[.]" *Third*, the modification must be "necessary to serve the best interests of the child."

*Jared M. v. Molly A.*, 246 W. Va. 556, 561, 874 S.E.2d 358, 363 (2022) (citations omitted). In determining whether changes were anticipated, the question is not whether they *could* have been anticipated, but whether they *were* in fact anticipated and provisions were already made for such potential changes in the parenting plan. *Skidmore v. Rogers*, 229 W. Va. 13, 21, 725 S.E.2d 182, 190 (2011). Alternatively, when seeking relief under West

4

Virginia Code § 48-9-401(b), the petitioning party must prove that the parenting plan was not working as anticipated *and* was manifestly harmful to the child.

On these issues, the family court held that Mother failed to offer sufficient proof in support of her claims that a substantial change in circumstances had occurred pursuant to W. Va. Code 48-9-401 and found that "given the high level of animosity between the parties . . . it [was] not realistic to believe the disdain the parties currently have for one another was then an unanticipated condition of future parenting." Based on those findings, we cannot conclude that the family court's denial of Mother's petition for modification was clearly erroneous or an abuse of discretion.

In her second assignment of error, Mother contends that the family court erroneously dismissed her petition for contempt because it was contrary to the child's best interest and against the weight of the evidence presented. We disagree. The Supreme Court of Appeals of West Virginia ("SCAWV") has long recognized, "[a]n integral part of the family court's authority to enter final orders [. . .] is its corresponding power to enforce those orders through contempt proceedings." *Deitz v. Deitz*, 222 W. Va. 46, 54, 659 S.E.2d 331, 339 (2008) (per curiam). Further, the family court's enforcement of such orders is within its discretion. *See Mark V.H. v. Dolores J.M.*, 232 W.Va. 378, 387, 752 S.E.2d 409, 418 (2013) (per curiam) and *Joshua T. v. Angela M.*, No. 22-ICA-221, 2023 WL 2366493, at *2 (W. Va. Ct. App. Mar. 6, 2023) (memorandum decision). Here, after considering the evidence presented, the family court made the discretionary determination that "the evidence [did] not support a finding of contempt against [F]ather," Mother's testimony was "uncorroborated and not credible," and "[t]here was no proof offered that the child [was] uncomfortable at any time in Father's care." Based upon the record before us, we cannot conclude that the family court abused its discretion and affirm its ruling on this issue.

Third, Mother argues that the family court erred in refusing to disqualify Father's counsel when she previously discussed the case at length and formed an attorney-client relationship. We disagree. The SCAWV has held that a motion to disqualify an attorney "should be viewed with extreme caution because of the interference with the lawyer-client relationship." Syl. Pt. 1, in part, *Garlow v. Zakaib*, 186 W. Va. 457, 413 S.E.2d 112 (1991); *see State ex rel. Michael A.P. v. Miller*, 207 W. Va. 114, 118, 529 S.E.2d 354, 358 (2000) (recognizing that the decision to grant or deny such a motion is within the lower court's discretion). The record reflects that Attorney Garvin had limited interaction with Mother, advised Mother to first end the relationship with her prior counsel before she would consider representation, and sought an informal opinion from the Lawyer Disciplinary Board prior to moving forward on Father's case. The family court conducted a hearing on the matter, finding that Attorney Garvin was more credible than Mother on the question as to whether confidential information had been divulged. The family court determined that, based on those facts, Attorney Garvin could proceed with her representation of Father.

Therefore, we conclude that the family court did not abuse its discretion by allowing Attorney Garvin to proceed with her representation of Father.[6]

Accordingly, we affirm the family court's January 31, 2024, orders denying Mother's petition for modification and dismissing her petition for contempt.

Affirmed.

**ISSUED:** December 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[6] We also note that the SCAWV has held, "[a] party aggrieved by a lower court's decision on a motion to disqualify an attorney may properly challenge the lower court's decision by way of a petition for writ of prohibition." Syl. Pt. 1, *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 697 S.E.2d 740 (2010). Mother could have filed a petition for writ of prohibition but did not exercise this option.