366 S.E.2d 654

**STATE of West Virginia**

v.

**Sharon LIVINGSTON.**

**No. 16839.**

Supreme Court of Appeals of West Virginia.

Feb. 24, 1988.

Mitchell L. Klein, Spurlock & Klein, Huntington, for Sharon Livingston.

Gayle Fidler, Charleston, for State of W.Va.

---

PER CURIAM:

This case is before the Court upon the appeal of Sharon Livingston from her conviction of breaking and entering. It arises from an order of the Circuit Court of Cabell County which denied the appellant's motion for a new trial and a subsequent order which sentenced the appellant to one to ten years in the penitentiary. The appellant contends she was denied effective assistance of counsel because a conflict of interest existed between her and a co-indictee, her husband, and the same attorney represented both. We agree and reverse.

I

A breaking and entering occurred at the Saw Sharpening Service located in Milton, Cabell County, West Virginia, on July 15, 1983. A window was broken to gain access to the store and merchandise was stolen. The appellant, Sharon Livingston, and her husband, Daniel Livingston lived above the store.

Members of the Cabell County Sheriff's department investigated the scene, but found no evidence concerning the perpetrators of the crime. However, while at the store, conducting the investigation, an officer received an anonymous tip from a male telephone caller who suggested the officer check a specific automobile and informed him of its location.

The car was parked in front of the home of John Hackney. When questioned about its ownership, Hackney told the officers that it was abandoned by two unidentified males. The officer towed the car to the police station due to registration irregularities.

Later, the police determined that the car was owned by Sharon and Daniel Livingston. Mr. and Mrs. Livingston went to the station on July 18, 1983 to retrieve the car. Before doing so, they signed a consent form to search the car. Inside the trunk were the items stolen from the Saw Sharpening Shop. Both Mr. and Mrs. Livingston gave voluntary written statements concerning the whereabouts of the car during the evening of the breaking and entering.

Both stated that Hackney had borrowed the car.

An officer testified that in late July, 1983, Sharon Livingston came to the police station and asked him if she would lose custody of her children should authorities discover that she lied in her statement.

On August 18, 1983, Sharon Livingston again came to the police station, asking to make another statement. After being advised of her *Miranda* rights and signing a waiver, Mrs. Livingston gave, in pertinent part, the following statement:

Around 10:00 or 10:30 p.m. on the evening of 15 July 83 Danny[,] my husband, and John Hackney was sitting in the yard[.] John Hackney said he had been thinking about robbing the chain saw shop in front of where we lived.... Danny told me to go inside and that I didn't say nothing or see anything[.]— Between 11:00 and 12:00 p.m. Danny went through the back window of the Chain Saw Shop[.] [H]e handed two chain saws out through the rear window to John Hackney[.] John then took the saws to our red Nova[.] ... John put them into the trunk of the car[.] I went back into the house with the kids[.]

On August 20, 1983, two days after Mrs. Livingston gave her statement, arrest warrants were issued against her husband, Daniel Livingston, and John Hackney. The warrant for Daniel Livingston could not be served because he and Sharon had left the State.

On September 11, 1983, one of Mrs. Livingston's neighbors gave a statement to the police. The neighbor said that she overheard the appellant and her husband quarrelling some time near August 7 or 8, 1983. During the quarrel, the neighbor overheard the appellant threaten to report her husband to the police for "breaking and entering." The neighbor then recalled Mrs. Livingston state, "while you all had me to watch for the police." The police did not discover any other additional evidence to link Sharon or Daniel Livingston to the breaking and entering.

On September 26, 1983, Sharon Livingston, Daniel Livingston and John Hackney

were jointly indicted as principals in the first degree for breaking and entering the store.[1]

By separate orders, Sharon and Daniel Livingston were appointed the same counsel. Apparently, a motion to sever their cases was granted sometime between the months of mid-December to mid-January.[2]

At her trial for breaking and entering, Sharon Livingston was the only witness for the defense. The appellant testified that she was intoxicated at the time she made the August, 1983, statement. She maintained that the original, July 1983, statement given by her and her husband was accurate, and that she knew nothing as to the whereabouts of their car on the night of the crime.

The State produced two witnesses to the August, 1983 statement who testified that Mrs. Livingston was not intoxicated.

Immediately after the jury returned a guilty verdict against the defendant, the case of *State v. Daniel Livingston* was called. At defense counsel's motion, the case was dismissed as the prosecutor conceded that there was insufficient evidence to try the case. Mrs. Livingston's appellant counsel also asserts that co-indictee Hackney has never been prosecuted.

## II

It is well established that a denial of effective assistance of counsel is a denial of the right to counsel recognized in both *W. Va. Const.* art. III, § 14 and U.S.C.A. Const.Amend. VI. *State ex rel. Favors v. Tucker,* 143 W.Va. 130, 140, 100 S.E.2d 411, 416 (1957), *cert. denied,* 357 U.S. 908, 78 S.Ct. 1153, 2 L.Ed.2d 1158 (1958). Claims of ineffective representation take

many forms, such as allegations of neglect during trial, or failure to zealously represent a client due to a conflict of interest. In *State v. Reedy,* 177 W.Va. 406, 352 S.E.2d 158, 162–63 (1986), we distinguished between such claims of ineffective assistance of counsel and noted that the allegation of ineffectiveness due to a conflict of interest requires both a different quantum of proof by the appellant and a different level of judicial review.

*Reedy,* a direct appeal of a criminal conviction based on allegations of conflict of interest, applied the standard of review employed in *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976), a *habeas corpus* proceeding founded on similar allegations. *Reedy* note 6, 177 W.Va. 406, 352 S.E.2d 158, 163 (1986). *Postelwaite* states that,

> The joint representation by counsel of two or more accused, jointly indicted and tried is not improper *per se;* and, one who claims ineffective assistance of counsel by reason of conflict of interest in the joint representation must demonstrate that the conflict is actual and not merely theoretical or speculative.

Syl. pt. 3, *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975).

"Once a conflict is found, however, prejudice and ineffectiveness of counsel are presumed." [citation omitted]. *State v. Reedy,* 177 W.Va. 406, 411, 352 S.E.2d 158, 163 (1986).

The conflict in this case is evident. The husband, the wife, and Hackney were jointly indicted for the crime. But for the wife's statement, the State lacked any evi-

---

1. Sharon Livingston was tried as an aider and abettor to the breaking and entering which is punishable as principal in the first degree. *W.Va.Code,* 61–11–6 [1931]. *W.Va.Code,* 61–11–6 [1931] provides in pertinent part that "[i]n the case of every felony, every principal in the second degree and every accessory before the fact, shall be punishable as if he were the principal in the first degree; ..."

 Prosecution for aiding and abetting requires a showing that the defendant participated in and desired to bring about the offense. It also re-

quires the prosecution to establish intent. *See State v. Harper,* 179 W.Va. 24, 365 S.E.2d 69 (1987) and cases cited therein.

2. The actual order severing the two cases is not included in the record we have before us. Orders prior to December 13, 1983, concerning continuances establish that the cases were not severed. There are no further orders of record until January 23, 1984, where an order grants a continuance in the case of *State v. Sharon Livingston.*

dence linking the husband to the crime.[3] Indeed, the investigating officers testified that they intended to use the wife's statement to prosecute the husband and Hackney.[4]

The State's case against the wife was weak. Mrs. Livingston's August, 1983 statement suggests she was a bystander to the crime. Both the timing and phrasing of the neighbor's statement concerning Mrs. Livingston's role as a "lookout" in a "breaking and entering" make it suspect. Mrs. Livingston had a previous felony conviction, therefore, a second felony conviction would assure her of an enhanced prison sentence.[5] The interests of Mr. and Mrs. Livingston were not compatible. Since the same counsel represented both, the conflict is evident and Mrs. Livingston was denied effective assistance.

■ We have noted that a criminal defendant may waive potential conflicts, for strategic reasons. *State v. Reedy*, 177 W.Va. 406, 411, 352 S.E.2d 158, 163 (1986). However, in cases of multiple representation, a waiver may only occur when counsel has fully disclosed to the client the possible conflict and "it is obvious" that counsel is able to represent each client without impairing his professional judgment. Code of Professional Responsibility, Disciplinary Rule 5–105(B) and (C). This Court was not provided with a record of an inquiry conducted by the trial court pursuant to *W.Va. R.Crim.P.* 44(c), even though Mr. and Mrs. Livingston were co-indictees and represent-

ed by the same counsel.[6] Therefore, we cannot assume that a waiver, approved by the trial court, occurred.

■ Since we find that the accused has established that a conflict existed, and there is no evidence in the record that the accused waived her right to separate counsel, prejudice is presumed. We therefore reverse and remand this case to the Circuit Court of Cabell County for further proceedings consistent with this opinion.

*Reversed and remanded.*

BROTHERTON, J., dissents.

---

3. Immediately after the appellant's trial, where she denied the accuracy of the statement, the State agreed to dismiss the husband's case, specifically stating that there was insufficient evidence against the husband.

4. While the husband could assert the spousal privilege provided by *W.Va.Code*, 57–3–3 [1923], the wife could testify against Hackney, who in turn could link the husband to the crime.

5. *W.Va.Code*, 61–11–18 [1943] provides, in pertinent part:

When any person is convicted of an offense and is subject to confinement in the penitentiary therefor, and it has been determined, ... that such person had been before convicted ... of a crime punishable by imprisonment in a penitentiary, ... five years shall be added to the maximum term of imprisonment otherwise provided for under such sentence.

6. Rule 44(c) of the *West Virginia Rules of Criminal Procedure* states:

(c) *Joint Representation.* Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

The *West Virginia Rules of Criminal Procedure* were effective October 1, 1981; appellant's trial was conducted in 1984.