376 S.E.2d 599

**Jan Erin COLE, Petitioner,**

v.

**C.M. WHITE, Warden, Huttonsville Correctional Center, Respondent.**

**No. 18480.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

---

Lee H. Adler, Beckley, for petitioner.

Charles G. Brown, III, Atty. Gen., for respondent.

MILLER, Justice:

In this original proceeding in habeas corpus, the relator, Jan Erin Cole, asserts that his right to the effective assistance of counsel was violated when trial counsel jointly represented him and his codefendant father. The relator and his father, Emory Cole, were indicted in January, 1984, by a Raleigh County grand jury for the crime of malicious assault.

The victim, Phyllis Cox, testified that on August 3, 1983, the relator beat her with a stick-like object and threatened future beatings if she testified as a witness in a pending case against his cousin, a Mr. Lindy Given. She further testified that Emory Cole sat in the relator's automobile and "watched" what occurred.

The relator and Emory Cole were jointly tried in May, 1985, found guilty, and sentenced to not less than two nor more than ten years in the state penitentiary. Final sentence was imposed on February 25, 1987. The issues raised in this habeas corpus petition were not raised on appeal.[1]

When the relator was arrested, trial counsel was appointed to represent him. Subsequently, Emory Cole retained the same trial counsel, who represented both the relator and his father at trial and through the initial appeal.

The right of a criminal defendant to assistance of counsel includes the right to effective assistance of counsel. W.Va. Const. art. III, § 14; U.S.C.A. Const. amend. VI; *See, e.g., Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988); *State v. Reedy,* 177 W.Va. 406, 352 S.E.2d 158 (1986); *State ex rel. Favors v. Tucker,* 143 W.Va. 130, 140, 100 S.E.2d 411, 416 (1957), *cert. denied,* 357 U.S. 908, 78 S.Ct. 1153, 2 L.Ed.2d 1158 (1958). Although our cases have recognized this point, we now explicitly state, quoting *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220, 230 (1981), that "where a constitutional right to counsel exists, [under W.Va. Const. art. III, § 14] ... there is a correlative right to representation that is free from conflicts of interest."[2]

When constitutional claims of ineffective assistance of counsel due to a conflict of interest are raised, either on direct appeal of a criminal conviction or in a habeas corpus proceeding founded on similar allegations, we apply the standard of review embodied in Syllabus Point 3 of *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 491, 212 S.E.2d 69, 76 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976):

> "The joint representation by counsel of two or more accused, jointly indicted and tried is not improper *per se;* and, one who claims ineffective assistance of counsel by reason of conflict of interest

---

1. We denied the relator's appeal on January 20, 1987.

2. *Wood* cited *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

in the joint representation must demonstrate that the conflict is actual and not merely theoretical or speculative."

*See also Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *State v. Livingston*, 179 W.Va. 206, 366 S.E.2d 654 (1988); *State v. Reedy, supra.*

■ Furthermore, it is clear that in a case of joint representation, once an actual conflict is found which affects the adequacy of representation, ineffective assistance of counsel is deemed to occur and the defendant need not demonstrate prejudice. *See Cuyler v. Sullivan*, 446 U.S. at 349–50, 100 S.Ct. at 1719, 64 L.Ed.2d at 347; *State v. Reedy*, 177 W.Va. at 411, 352 S.E.2d at 163.

■ The State's chief argument is that the defendant waived his right to claim a conflict in representation. This is supported not by anything in the trial record, but by a post-trial ex parte affidavit of defense counsel. The affidavit is conclusory as to the possible nature of the conflict, the advice given to the defendants, and their specific response.[3] We spoke to the necessity of counsel's disclosure of potential conflicts in order for the defendant to make an informed waiver in *Reedy*, 177 W.Va. at 411, 352 S.E.2d at 163:

"Disclosure of a potential conflict is mandated in order to give the defendant an opportunity to decide whether to retain other counsel or demand different court appointed counsel.... If disclosure is not made, the defendant is denied the opportunity to make an informed and intelligent decision concerning his defense."

In *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the Court made it clear that a trial court may refuse to allow an express waiver by codefendants of counsel's potential conflicting interest. There the defendant had been informed of the potential conflicts and expressly agreed to waive them and keep the retained attorney. The trial court refused to permit the waiver. The Supreme Court affirmed, stating that the constitutional right to select counsel must defer to "the institutional interest in the rendition of just verdicts in criminal cases [that] may be jeopardized by unregulated multiple representation." 486 U.S. at 161, 108 S.Ct. at 1698, 100 L.Ed.2d at 149.

If an express waiver cannot automatically cure a conflict of representation under *Wheat*, it is difficult to see how we can infer that an implied waiver exists in this case sufficient to cure any conflict of representation. This is particularly true where there is no specific disclosure of potential conflicts. We recognized in both *Reedy* and *Livingston*[4] that it was possible for a defendant to waive potential conflicts arising by his counsel representing codefendants.[5] However, in both of these cases, we refused to find a waiver. It should be

---

3. The relevant statements of the affidavit are:

"That based upon the affiant's recollection and memory of numerous pretrial discussions, had with both Jan Erin Cole and Emory Cole, affiant is certain that he discussed the possibility of arriving at a position of conflicting interests between the co-defendants during the course of a trial if he accepted the representation of Emory Cole[.]

"That throughout the discussion with both Jan Cole and Emory Cole, both defendants maintained their innocence, noninvolvement and alibi defenses[.]

\* \* \* \* \* \*

"This affiant, at the time of representation of the relator, Jan Erin Cole, and his father, Emory Cole, was well aware of the case law with respect to joint representation of co-defendants[.]"

4. *Livingston*, 179 W.Va. at 209, 366 S.E.2d at 657, made this statement:

"We have noted that a criminal defendant may waive potential conflicts, for strategic reasons. *State v. Reedy*, 177 W.Va. 406, 411, 352 S.E.2d 158, 163 (1986). However, in cases of multiple representation, a waiver may only occur when counsel has fully disclosed to the client the possible conflict and 'it is obvious' that counsel is able to represent each client without impairing his professional judgment. Code of Professional Responsibility, Disciplinary Rule 5–105(B) and (C)."

5. DR 5–105 of the Code of Professional Responsibility cautions against joint representation, and permits joint representation only upon consent obtained "after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." DR 5–105(C).

noted that both cases were decided before *Wheat* and are subject to *Wheat*'s constraints.

Of further concern is the lack of compliance with Rule 44(c) of the West Virginia Rules of Criminal Procedure, which requires trial courts to "promptly inquire with respect to such joint representation and ... personally advise each defendant of his right to effective assistance of counsel, including separate representation." [6] Our Rule 44(c) is the same as Rule 44(c) of the Federal Rules of Criminal Procedure. In 8B J. Moore, Moore's Federal Practice § 44.08[1] at 73, this statement is made with regard to the purpose of the rule and a summary of the rather lengthy commentary made by the Advisory Committee:

> "Rule 44(c) requires that whenever co-defendants represented by the same attorney or law firm, whether retained or appointed, the trial court must inform each defendant of his right to the effective assistance of counsel including the right to separate representation. Furthermore, the rule requires that unless there is 'good cause to believe *no* conflict of interest is likely to arise' the court must act to protect each defendant's right to counsel. The rule does not specify what actions may be taken, but presumably may include disqualification of counsel, appointment of separate counsel, or requiring the defendants to execute written waivers of the right to counsel." (Footnotes omitted).

We observe that Rule 44(c) is forcefully written in order to protect the constitutional interest involved: the right to effective assistance of counsel which, as we have earlier noted, includes the right to have counsel that is free of any conflicting interest. It is obvious that one of the practical purposes of the rule is to ensure that in advance of a trial or other disposition of the case, any joint representation will be inquired into by the court so as to avoid a conflict problem that could result in a reversal.

The federal courts have tended to take the approach that the failure to comply with Rule 44(c) will not result in reversible error in the absence of a showing of some actual conflict of interest.[7] This conclusion is premised on reasoning that seems to us somewhat suspect, i.e., that the purpose of Rule 44(c) is to prevent actual conflicts of interest. The purpose of Rule 44(c) as set out in 8B J. Moore, *supra* at 73:

> "Following the decision in *Cuyler*, Congress enacted Rule 44(c), effective December 1, 1980. Rule 44(c) imposes the requirement that the trial court specifically advise codefendants, jointly represented, of their right to separate counsel." (Footnote omitted).

In *Cuyler*, the Supreme Court held that a trial court has no duty under the Sixth Amendment to inquire as to possible conflicts brought about by joint representation unless it knows or should reasonably know that a particular conflict exists or if an objection is made to the joint representation.[8] Thus, under *Cuyler*, the trial court had only a limited duty to inquire concern-

---

**6.** The full text of Rule 44(c), W.Va.R.Crim.P., is: "*Joint Representation.* Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel."

**7.** *E.g., United States v. Arias,* 678 F.2d 1202 (4th Cir.1982); *United States v. Benavidez,* 664 F.2d 1255 (5th Cir.1982), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1352 (1982); *United States v. Bradshaw,* 719 F.2d 907 (7th Cir.1983); *United States v. Crespo De Llano,* 838 F.2d 1006 (9th Cir.1987).

**8.** *Cuyler* acknowledged that "a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial." 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346.

ing conflicts arising from joint representation.

▌ Federal Rule 44(c) was obviously designed to give an enhanced procedural protection beyond that afforded constitutionally, as a court is required to "personally advise each defendant" as to the "right to the effective assistance of counsel, including separate representation." Furthermore, the rule requires the court to take some affirmative action "unless it appears that there is good cause to believe no conflict of interest is likely to arise." It is important to note that the standard for taking some affirmative action under Rule 44(c) is the trial court's belief that a conflict of interest is likely to arise. This is a lower standard than the Sixth Amendment's requirement of demonstrating an actual prejudice arising from *Cuyler, Holloway* and our *Postelwaite* case.[9]

To hold, as the federal courts appear to do, that a violation of Rule 44(c) requires reversal only if an actual conflict can be shown on appeal virtually emasculates the rule. It places the law in the same position as it was before Rule 44(c) was adopted. We decline to adopt such a position particularly when a conflict arising from joint representation can easily be cured by requiring separate counsel or by ordering separate trials. The utilization of separate trials has been recognized in *Cuyler* as a technique that may "significantly reduc[e] the potential for a divergence in [codefendants'] interest." 446 U.S. at 347, 100 S.Ct. at 1708, 64 L.Ed.2d at 346.[10]

▌ The more difficult question is to determine what rule is to be followed where there has been no compliance with Rule 44(c). As we have earlier pointed out, its chief purpose is to ensure that conflicts arising from joint representation are discovered in the early stages of the criminal proceeding and cured so that error is avoided. The rule's more relaxed standard, that of a "likely conflict," facilitates disposing of potential conflicts which are often hard to analyze after trial on appeal. This is because the course of action dictated by the conflict can be masked by the claim that it was trial strategy. Another common problem is that an actual conflict cannot be shown simply because counsel refrained from taking action which he might have done if he had no conflict, as *Holloway*, 435 U.S. at 490–91, 98 S.Ct. at 1173, 55 L.Ed.2d at 438, explains:

"But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible." [11]

9. We commented on the Rule 44(c) standard in note 6 of *Reedy*, 177 W.Va. at 411, 352 S.E.2d at 163:

"The *Postelwaite* standard applies in reviewing a conviction of a criminal defendant on appeal. Pursuant to Rule 44(c) of the West Virginia Rules of Criminal Procedure, a different standard must be applied by the trial court in initially determining whether joint representation is proper.... [A] trial court must presume that a conflict of interest will arise unless good cause is shown to the contrary[.]"

10. It is clear that by statute, W.Va.Code, 62–3–8, a defendant jointly indicted for a felony may obtain a separate trial as summarized in Sylla-

bus Point 1 of *State v. VanMetre,* 176 W.Va. 365, 342 S.E.2d 450 (1986):

"'"Upon a joint indictment for a felony, any one of the persons jointly indicted may, under *Code*, 1931, 62–3–8, elect to be tried separately." Syllabus pt. 1, *State ex rel. Zirk v. Muntzing*, 146 W.Va. 349, 120 S.E.2d 260 (1961).' Syllabus Point 2, *State ex rel. Whitman v. Fox*, 160 W.Va. 633, 236 S.E.2d 565 (1977)."

*See also* Rule 13, W.Va.R.Cr.P.

11. The Supreme Court in *Holloway* also outlined other potential problems arising from joint representation:

"Joint representation of conflicting interests is suspect because of what it tends to prevent

We, therefore, conclude that when a trial court fails to follow the requirements of Rule 44(c), we will review the record to determine if any conflict likely existed between the jointly represented parties rather than to determine whether there is an actual conflict.

In this case, the State's evidence at trial focused on Emory Cole, the father, and his relationship to the victim and Mr. Given. It was shown that Emory Cole was a close friend of Mr. Given. The victim stated that before the August beating by the relator, Mr. Given had also beaten her in June. She stated that Emory Cole had told her not to seek help from the police after Mr. Given had beaten her.

Furthermore, the record suggests it was Emory Cole who may have been the motivating person behind the victim's August beating that gave rise to the present charges. It was Emory Cole's friendship to Mr. Given and not his son's that was stressed. The victim testified that when she was beaten by the son, he told her it was being done "to keep [her] mouth shut" about Mr. Given.

Furthermore, as a result of the joint representation and joint trial, damaging evidence came in which would not have been admissible if the relator had had separate representation or a separate trial. As an illustration, the victim was able to state that Emory Cole was riding with Mr. Given when his automobile struck and killed an individual.

More harm occurred on cross-examination of Emory Cole's alibi witness. The prosecutor was able to introduce impeachment evidence that she had been beaten by Emory Cole on several occasions and this was why she supplied the alibi evidence. It was also shown that she had been asked by Emory Cole to lie about his connection to and friendship with Mr. Given.

We recognize in a habeas corpus proceeding that ordinarily it is only errors of a constitutional dimension which will be reviewed rather than trial error, as stated in Syllabus Point 2 of *Edwards v. Leverette*, 163 W.Va. 571, 258 S.E.2d 436 (1979):

" 'A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed.' Point 4, Syllabus, *State ex rel. McMannis v. Mohn*, W.Va. [163 W.Va. 129] 254 S.E.2d 805 (1979)."

Consequently, the violation of Rule 44(c) and its standard of a likely conflict is not an error which can be reached in a habeas corpus proceeding. A constitutional claim of ineffective assistance of counsel arising from joint representation of codefendants may be reached in a habeas corpus proceeding if an actual conflict is shown.

In this proceeding, we believe such actual conflict has been shown from the record. We, therefore, grant the writ of habeas corpus. The discharge of the prisoner is, however, stayed for a period of sixty days to permit the State to proceed to retry the relator in a constitutionally permissible manner.[12]

Writ granted as moulded.

---

the attorney from doing. For example, in this case it may well have precluded defense counsel ... from exploring possible plea negotiations and the possiblity of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied." 435 U.S. at 489–90, 98 S.Ct. at 1173, 55 L.Ed.2d at 438.

12. In Syllabus Point 3 of *Rhodes v. Leverette*, 160 W.Va. 781, 239 S.E.2d 136 (1977), we stated: "An unconditional discharge from confinement upon the issuance of a writ of habeas corpus does not ordinarily operate to bar further prosecution under principles of double jeopardy."