IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 19-1160

_____

FILED
May 28, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
JUNE YURISH,
KRISTIN DOUTY,
and CHRISTINA LESTER,
Petitioners

v.

THE HONORABLE LAURA V. FAIRCLOTH,
Judge of the Circuit Court of Berkeley County, and
THE STATE OF WEST VIRGINIA,
Respondents

_____

ORIGINAL PROCEEDING IN PROHIBITION
WRIT DENIED

_____

Submitted: March 3, 2020
Filed: May 28, 2020

Christian J. Riddell, Esq.                    Patrick Morrisey, Esq.
Stedman & Riddell, PLLC                       Attorney General
Martinsburg, West Virginia                    Gordon L. Mowen, II, Esq.
Counsel for Petitioners                       Assistant Attorney General
                                              Charleston, West Virginia
                                              Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2. "In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention

i

of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance." Syllabus Point 1, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979) (*superseded by statute on other grounds as stated in State ex rel. Thornhill Group, Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014)).

3.      "The right of a criminal defendant to assistance of counsel includes the right to effective assistance of counsel." Syllabus Point 1, *Cole v. White*, 180 W. Va. 393, 376 S.E.2d 599 (1988).

4.      "Where a constitutional right to counsel exists under W.Va. Const. art. III, § 14, there is a correlative right to representation that is free from conflicts of interest." Syllabus Point 2, *Cole v. White*, 180 W. Va. 393, 376 S.E.2d 599 (1988).

5.      "Rule 44(c) of the West Virginia Rules of Criminal Procedure requires trial courts to 'promptly inquire with respect to such joint representation and . . . personally advise each defendant of his right to effective assistance of counsel, including separate representation.'" Syllabus Point 5, *Cole v. White*, 180 W. Va. 393, 376 S.E.2d 599 (1988).

6.      "The standard for taking some affirmative action under Rule 44(c) of the West Virginia Rules of Criminal Procedure is the trial court's belief that a conflict of

interest is likely to arise. This is a lower standard than the Sixth Amendment's requirement of demonstrating an actual prejudice." Syllabus Point 6, *Cole v. White*, 180 W. Va. 393, 376 S.E.2d 599 (1988).

WALKER, Justice:

Petitioners June Yurish, Kristin Douty, and Christina Lester are charged with the same crime arising from the same circumstances in three criminal cases pending in the Circuit Court of Berkeley County. Christian Riddell is counsel for all three, jointly. But the State moved to disqualify Mr. Riddell from representing Petitioners because, it argued, the joint representation created a current conflict among Petitioners' interests and threatened future conflicts that would jeopardize the integrity of the proceedings. The circuit court granted the State's motion.

Petitioners now seek a writ from this Court to prohibit the circuit court from enforcing that order. They contend that the disqualification of Mr. Riddell is a clear violation of their Sixth Amendment right to choose their own counsel, regardless of the conflicts that exist or that may arise. We disagree. The circuit court did not clearly err when it applied Rule 44(c) of the West Virginia Rules of Criminal Procedure to disqualify Mr. Riddell from representing Petitioners, jointly, at this early stage of the proceedings. So, we deny the requested writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2019, authorities filed three criminal complaints in the Berkeley County Magistrate Court against Petitioners June Yurish, Kristin Douty, and Christina

1

Lester.[1]  The complaints charged each Petitioner with a single violation of West Virginia Code § 49-2-812(a), Failure to Report.[2]  All three charges arise from the same set of facts. Christian Riddell appeared in magistrate court as counsel for each Petitioner.  At his request, the magistrate court transferred the cases to circuit court, which then scheduled an initial hearing for October 21, 2019.

The State moved to disqualify Mr. Riddell from appearing in Petitioners' cases immediately before the October 21 initial hearing.  In its motion, the State represented that it had offered plea agreements to Petitioners which, as a condition of acceptance, required each to assist the State's investigation and, if necessary, to testify against her codefendants.  The State argued in its motion that the offer created a concurrent conflict of interest for Mr. Riddell under West Virginia Rule of Professional Conduct 1.7.[3]

---

[1] Petitioners' case numbers in the Circuit Court of Berkeley County are Nos. 19-M-7, 19-M-8, and 19-M-9.

[2] West Virginia Code § 49-2-812(a) states:

> Any person, official or institution required by this article to report a case involving a child known or suspected to be abused or neglected, or required by section eight hundred nine of this article to forward a copy of a report of serious injury, who knowingly fails to do so or knowingly prevents another person acting reasonably from doing so, is guilty of a misdemeanor and, upon conviction, shall be confined in jail not more than ninety days or fined not more than $5,000, or both fined and confined.

[3] Rule of Professional Conduct 1.7 states:

> (a)    Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a

The parties then appeared for the previously scheduled hearing on October 21. There, Mr. Riddell produced conflict waivers[4] from each of his clients in which they represented that,

> 3. My attorney has further informed me that it is probable that the prosecutor will offer me a plea agreement

---

> concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

[4] Each Petitioner signed her waiver on October 4, 2019. The signatures were not notarized, however, until December 3, 2019.

[that] requires my cooperation and testimony against my co-defendants in exchange for a more lenient sentence.

4.      My attorney has informed me that, pursuant to Rule 1.7 of the West Virginia Rules of Professional Conduct, the possibility of such a plea agreement creates for him a concurrent conflict of interest as to joint representation because he will be able unable to negotiate any such plea agreement on my behalf because of his ongoing representation and duties to my co-defendants.

Petitioners responded to the State's motion the next month. They urged the circuit court to approach the State's motion with extreme caution out of deference to their rights under the Sixth Amendment of the United States Constitution to be represented by the counsel of their choice. They reasoned that their waivers cured any concurrent or future conflicts that may arise as the case progressed and that the State had not met its heavy burden to prove that disqualification was necessary and justified.[5]

The circuit court reconvened the parties on November 18, 2019. After argument, the circuit court granted the State's motion from the bench. The court found that regardless of any actual conflicts of interest, Mr. Riddell's joint representation of Petitioners created two likely future conflicts. First, one Petitioner may want to share information with Mr. Riddell that she did not want him to share with her codefendants. Mr. Riddell could not comply with that instruction if he continued to represent all three

---

[5] Petitioners also called the circuit court's attention to a 1990 criminal case in the Circuit Court of Berkeley County that they contended enabled the circuit court to assign each defendant individual counsel to conduct plea negotiations. A thirty-year old circuit court case is not relevant to our consideration of the circuit court's order.

4

Petitioners. Second, Mr. Riddell could not advise one Petitioner on any proposed plea agreement that would obligate her to assist the State in the prosecution of her codefendants. The court recognized Petitioners' position that they would never accept a plea agreement but observed that that position could change. And, the circuit court observed that Mr. Riddell's participation in plea negotiations in any of Petitioners' cases could easily give rise to a direct appeal or a habeas petition, regardless of Petitioners' conflict waivers.

The parties gathered once again on December 10 so that the circuit court could ask each Petitioner about the joint representation and to advise her of her rights, as required by West Virginia Rule of Criminal Procedure 44(c).[6] During the hearing, the court questioned each Petitioner individually and in near-identical fashion. Each Petitioner affirmed to the circuit court that she understood that she had a right to be represented by counsel. Each Petitioner also affirmed her understanding that because of the joint representation, Mr. Riddell had to meet with Petitioners simultaneously or obtain the others' permission to keep confidential information she shared with him. Each Petitioner also affirmed that she understood that if the State offered a cooperation plea agreement, or if she decided to approach the State about a plea agreement, Mr. Riddell would have to withdraw from the joint representation arrangement. Each Petitioner also informed the

_____

[6] On November 19, the circuit court entered an order confirming that it had granted the State's motion to disqualify Mr. Riddell during the hearing the day before and scheduling another hearing for November 21 to conduct the colloquy mandated by Rule 44(c). Before the November 21 hearing, Petitioners filed supplemental briefing, so the circuit court continued the matter until December 10 to allow the State to respond.

5

circuit court that no conflict of interest existed or could occur in the future that would justify disqualification of Mr. Riddell from her case.

Following the colloquy, the court addressed the applicability of Rule 44(c) to the case at hand. The court found that the rule applied to potential conflicts as well as actual ones and concluded that good cause existed under Rule 44(c) to believe that a conflict of interest would likely arise in Petitioners' cases that would disqualify Mr. Riddell from representing Petitioners jointly. The court explained that while a conflict may not arise immediately in Petitioners' cases, it would certainly arise

> once the Court moves forward and the Court makes a ruling about the admissibility of that tape that has been circulating, as the Court goes through different hearings and different matters are addressed, I cannot fathom a situation where a conflict of interest would not likely arise in this case. And as a result of that in order to protect the defendants according to Rule 44(c) the Court will grant or has already granted the state's motion and I just wanted to re-affirm that decision here today.

> Even though the individual defendants have been I think sincere in their statements to the Court and certainly want you, Mr. Riddell, to represent them I don't believe that they're making decisions that are in their best interest and even when I heard one of the defendants say I don't feel that there would be any conflict that's not saying there couldn't possibly be and that's the standard the Court employs.

Petitioners' counsel then asked the circuit court to clarify its ruling and advise whether it intended to disqualify him from representing one Petitioner or all of them. The court responded:

> No, you're not permitted to represent any of them. A conflict for one is a conflict for all. I have no idea what shared

6

information you've been given nor would I even go so far as to ask that is not a province of the Court but you have clearly met with your clients in an effort to be of assistance to them. They have engaged you. They have spoken with you and you've been their attorney for several months now. So the perception is there that you have information that they have shared with you that may be adverse at some point to any one of the other defendants. So this Court does adopt the pretty standard requirement that if you have a conflict for one you have a conflict for all.

The circuit court entered an order on December 11, 2019, memorializing its oral rulings from the December 10 hearing. Petitioners seek a writ from this Court prohibiting the enforcement of the December 11 order.

## II. STANDARD OF REVIEW

A writ of prohibition is an extraordinary remedy reserved for extraordinary causes.[7] When a party argues that a court has acted beyond its legitimate authority, rather than its jurisdiction, we look to five factors to guide our determination as to whether the party's case is extraordinary and, therefore, deserving of relief by extraordinary writ. Those factors are:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order

---

[7] *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 829 S.E.2d 35, 40 (2019).

7

raises new and important problems or issues of law of first impression.[8]

The third factor—whether the tribunal's order is clearly erroneous as a matter of law—carries substantial weight.  As we explained in Syllabus Point 1 of *Hinkle v. Black*,

this Court will use prohibition in this discretionary way to correct only *substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate* which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.[9]

We will not intrude in an ongoing proceeding in a lower tribunal to correct a simple abuse of discretion.[10]  We keep this standard in mind as we consider Petitioners' arguments and the law that applies to them.

---

[8] Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).  "Under this and similar standards applied in the past, the Court has consistently found that a party aggrieved by a trial court's decision on a motion to disqualify may properly challenge such ruling by way of a petition for a writ of prohibition."  *State ex rel. Keenan v. Hatcher*, 210 W. Va. 307, 311, 557 S.E.2d 361, 365 (2001).

[9] Syl. Pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979) (emphasis added) *superseded by statute as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 570, 759 S.E.2d 795, 802 (2014).  *See also State ex rel. W. Va. Reg'l Jail Auth. v. Webster*, ___ W. Va. ___, 836 S.E.2d 510, 518 (2019) ("Moreover, a court commits clear legal error when it incorrectly chooses, interprets, or applies the law.") (internal quotation omitted).

[10] *See* Syl. Pt. 2, in part, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.").

**III. DISCUSSION**

Petitioners contend that the circuit court's order disqualifying Mr. Riddell from representing them in their criminal cases is a clear violation of their right to the assistance of counsel, guaranteed by the Sixth Amendment to the federal constitution and article III, § 14 of the West Virginia Constitution. They argue that the circuit court erroneously rejected their waivers of any current and potential conflicts that may arise due to the joint representation. They also argue that the circuit court did not approach the State's motion with the caution demanded by this Court's earlier decisions, including *State ex rel. Blake v. Hatcher*,[11] *Garlow v. Zakaib*,[12] and *State ex rel. Postelwaite v. Bechtold*.[13] They contend that the circuit court erred by granting the State's motion before they had an opportunity to conduct discovery and determine their strategy for trial. Finally, they contest the circuit court's decision to disqualify Mr. Riddell from all three of their cases, rather than permitting him to continue to represent at least one of them. After considering each of these arguments in view of the applicable law, we easily discern that Petitioners have not shown that theirs is an extraordinary cause that merits extraordinary relief.

---

[11] 218 W. Va. 407, 624 S.E.2d 844 (2005).

[12] 186 W. Va. 457, 413 S.E.2d 112 (1991).

[13] 158 W. Va. 479, 212 S.E.2d 69 (1975).

9

## A. Petitioners' Rights to the Effective Assistance of Counsel

The Sixth Amendment to the United States Constitution and article III, § 14 of the West Virginia Constitution guarantee a criminal defendant the right to the assistance of counsel. "The right of a criminal defendant to assistance of counsel includes the right to effective assistance of counsel."[14] "Where a constitutional right to counsel exists under W.Va. Const. art. III, § 14, there is a correlative right to representation that is free from conflicts of interest."[15] A criminal defendant's "right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial."[16]

"Given the necessarily close working relationship between lawyer and client, the need for confidence, and the critical importance of trust," the United States Supreme Court "has held that the Sixth Amendment grants a defendant 'a fair opportunity to secure counsel of his own choice.'"[17] Our cases recognize that right, too.[18] But, our cases also recognize that a criminal defendant's right to choose her own counsel is not absolute.

---

[14] Syl. Pt. 1, *Cole v. White*, 180 W. Va. 393, 376 S.E.2d 599 (1988).

[15] *Id*. at Syl. Pt. 2.

[16] *United States v. Cronic*, 466 U.S. 648, 658 (1984).

[17] *Luis v. United States*, ___ U.S. ____, 136 S. Ct. 1083, 1089 (2016) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).

[18] *See State ex rel. Blake*, 218 W. Va. at 413, 624 S.E.2d at 850 (recognizing the Sixth Amendment right to the counsel of one's choice and various limitations upon that right).

"'[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Sixth Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'"[19] A defendant has no right, for example, to an attorney who is not a member of the bar, or who has a conflict of interest due to a relationship with an opposing party."[20] A criminal defendant may waive her chosen counsel's conflict of interest with another party, but a trial court may reject that waiver "where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."[21]   That is particularly true in cases where one attorney represents criminal codefendants—an arrangement that is suspect even where codefendants waive potential conflicts that may arise from the joint representation and not just actual ones.  Joint representation can, for example, "'preclude[] defense counsel . . . from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would

---

[19]  *Id*. (quoting *Wheat v. United States,* 486 U.S. 153, 159 (1988)).

[20] *Luis*, 136 S. Ct. at 1089.

[21] *Wheat*, 486 U.S. at 163.  *See, e.g.*, Syl. Pt. 4, *State ex rel. Michael A.P. v. Miller*, 207 W. Va. 114, 529 S.E.2d 354 (2000) ("In a juvenile proceeding, the decision whether to grant or deny a motion to disqualify a lawyer due to a conflict of interest is within the sound discretion of the circuit court, even where the interested parties have waived any conflict.").

11

be acceptable.'"[22]  The West Virginia Rules of Professional Conduct recognize the potential conflicts created by joint representation in criminal cases and advise attorneys that "[t]he potential for conflict of interest . . . is so grave that ordinarily a lawyer should decline to represent more than one codefendant."[23]  So, while a single attorney may represent criminal codefendants without necessarily violating "constitutional guarantees of effective assistance of counsel" the arrangement's tendency to create conflicts of interest requires a court to "take adequate steps to ascertain whether the conflicts warrant separate counsel."[24]

---

[22] *Cole*, 180 W. Va. at 399 n.11, 376 S.E.2d at 605 n.11 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 489–90 (1978)).

[23] W. Va. R. Pro. Conduct 1.7, Cmt. 23.

[24] *Wheat*, 486 U.S. at 60 (quotations omitted).

West Virginia Rule of Criminal Procedure 44(c)[25] mandates a circuit court to act when a single attorney represents criminal codefendants.[26] The rule "requires trial courts to 'promptly inquire with respect to such joint representation and . . . personally advise each defendant of his right to effective assistance of counsel, including separate representation.'"[27] The rule also requires a court to protect each criminal defendant's right to counsel when required by the facts and circumstances of a particular case. "The standard for taking some affirmative action under Rule 44(c) of the West Virginia Rules of Criminal Procedure is the trial court's belief *that a conflict of interest is likely to arise*. This is a lower standard than the Sixth Amendment's requirement of demonstrating an actual

---

[25] The rule states,

> *Joint representation.* — Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

[26] Specifically, Rule 44(c) applies where "two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law . . . ." The State represented in its motion to disqualify Mr. Riddell that it plans to try Petitioners jointly. Petitioners do not assert otherwise.

[27] Syl. Pt. 5, *Cole*, 180 W. Va. at 393, 376 S.E.2d at 599 (emphasis added).

13

prejudice."[28] That holding and the rule's clear language direct a court to take appropriate action to prevent a conflict of interest that threatens a criminal defendant's right to counsel even if that conflict has not yet materialized. And, the rule requires a court to "promptly inquire" about joint representation in a particular case; so, a court should not wait until the eve of trial to determine whether the multiple representation is likely to give rise to a conflict of interest.[29] With this law in mind, we take up Petitioners' arguments as to why this Court should grant the requested writ.

## B.   *No Relief in Prohibition*

We make several observations before analyzing the circuit court's order for clear legal error or a flagrant abuse of discretion.[30] First, Petitioners acknowledge that their right to the counsel of their choice is not absolute. Second, they acknowledge that the joint representation arrangement in this instance creates both a concurrent and potential conflict of interest for Mr. Riddell, as their conflict waivers demonstrate. Finally, they

---

[28] *Id*. at Syl. Pt. 6 (emphasis added). *See also Wheat*, 486 U.S. at 163 (stating that court does not have to accept criminal defendant's waiver of defense counsel's conflict of interest "where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses").

[29] *See Wheat*, 486 U.S. at 162 (stating that "a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant . . . in the murk[y] pre-trial context when relationships between parties are seen through a glass, darkly").

[30] Petitioners do not argue the remaining four *Hoover* factors, or they make only passing reference to them. Thus, we limit our analysis to whether the circuit court committed clear legal error or a flagrant abuse of its discretion by granting the State's motion to disqualify Petitioners' counsel.

14

acknowledge that West Virginia Rule of Criminal Procedure 44(c) applies to cases like theirs, where one attorney represents two or more defendants jointly charged or joined for trial.

Petitioners' primary argument in support of the requested writ is that the circuit court's order is a clear, legal error or a flagrant abuse of discretion because they waived any current or potential conflicts that may arise due to the joint representation arrangement with Mr. Riddell. But that argument fails because Petitioners acknowledged that the joint representation arrangement in this case had the potential to create a conflict of interest for Mr. Riddell, and, in fact, already had. There is no dispute that the State offered cooperation plea agreements to Petitioners before October 21, 2019, when the State first moved to disqualify Mr. Riddell. So, the State's offer of cooperation plea agreements created an actual conflict of interest for Mr. Riddell because he could not advise one Petitioner without violating his professional obligations to the other. And, Petitioners admitted in their conflict waivers that the State would likely offer plea agreements as their cases progressed, demonstrating the strong possibility that future conflicts would arise.

Our cases provide that there is a presumption in favor of Petitioners' choice of Mr. Riddell as counsel. But, those cases also recognize that the presumption "'may be overcome not only by a demonstration of actual conflict but by a showing of a serious

15

potential for conflict.'"[31] Because Mr. Riddell's joint representation of Petitioners had already created an actual conflict of interest, and threatened additional serious conflicts in the future, we cannot say that the circuit court clearly erred as a matter of law or flagrantly abused its discretion when it granted the State's motion to disqualify Mr. Riddell, regardless of Petitioners' waivers.

Petitioners next make several arguments to support the same conclusion: that the circuit court clearly erred because it did not approach the State's motion to disqualify with appropriate caution. They warn that, if left unchecked, the circuit court's order will upset the apple cart of our earlier decisions regarding motions to disqualify criminal defense counsel. They forecast that the circuit court's order and its reliance on potential conflicts signals the end of joint representation in any criminal case. We do not agree with Petitioners' assessment of our earlier opinions nor do we agree with Petitioners' grim projection for the future of multiple representation arrangements.

Petitioners rely primarily on *State ex rel. Blake v. Hatcher* for their argument that the circuit court clearly erred as a matter of law when it granted the State's motion to disqualify because "[s]uch motion should be viewed with extreme caution because of the

---

[31] *Blake*, 218 W. Va. at 415, 624 S.E.2d at 852 (quoting *Wheat*, 486 U.S. at 164).

16

interference with the lawyer-client relationship."[32]  We easily distinguish *Blake* and the portion of that opinion heralded by Petitioners.

We do not find it necessary to recount the particulars of *Blake* because the syllabus points originated in that case make clear the circumstances in which they apply: "circumstances where there appears to be an actual conflict of interest or where there is a significant potential for a serious *conflict of interest involving defense counsel's former (or current) representation of a State witness*"[33] and motions to disqualify "a criminal defendant's counsel of choice *due to counsel's former representation of a State witness . . . .*"[34]  Indisputably, the circuit court disqualified Mr. Riddell due to the likelihood that conflicts of interest would arise due to his joint representation of Petitioners, not because he formerly represented a State's witness.  That is a critical distinction.  It places Petitioners' cases in the Rule 44(c) basket rather than the *Blake* basket.  So, while our discussion of a criminal defendant's right to effective counsel in *Blake* is informative, the particular holdings relied upon by Petitioners are not applicable to their case and do not

---

[32] *See id.* at Syl. Pt. 2 ("'A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.' Syllabus Point 1, *Garlow v. Zakaib,* 186 W.Va. 457, 413 S.E.2d 112 (1991).").

[33] *Id*. at Syl. Pt. 3, in part (emphasis added).

[34] *Id*. at Syl. Pt. 4, in part (emphasis added).

demonstrate that the circuit court's order is a clear error of law or a flagrant abuse of its discretion.

Petitioners also point to Syllabus Point 3 of *State ex rel. Postelwaite v. Bechtold*. In that case, the circuit court had granted habeas relief to jointly-represented criminal defendants on the ground that that arrangement rendered their trial counsel's assistance ineffective and so violated the defendants' Sixth Amendment rights.[35] We reversed the circuit court and held that "joint representation by counsel of two or more accused, *jointly indicted and tried* is not improper *per se*; and, one who claims ineffective assistance of counsel by reason of conflict of interest in the joint representation *must demonstrate that the conflict is actual and not merely theoretical or speculative*."[36]

Petitioners seize on this language from *Postelwaite* and conclude that the circuit court improperly disqualified Mr. Riddell based on a *likely* conflict rather than an *actual* one. However, "[t]he *Postelwaite* standard applies in reviewing a conviction of a criminal defendant on appeal. Pursuant to Rule 44(c) of the West Virginia Rules of Criminal Procedure, a different standard must be applied by the trial court in initially determining whether joint representation is proper."[37] Obviously, Petitioners have not been convicted nor do we review the circuit court's order on direct appeal. So, under the

---

[35] 158. W. Va. at 480, 212 S.E.2d at 70.

[36] *Id*. at Syl. Pt. 3.

[37] *State v. Reedy*, 177 W. Va. 406, 411 n.6, 352 S.E.2d 158, 163 n.6 (1986).

18

circumstances of Petitioners' cases, the circuit court correctly applied "[t]he standard for taking some affirmative action under Rule 44(c) of the West Virginia Rules of Criminal Procedure [that] is the trial court's belief that a conflict of interest is likely to arise."[38] *Postlewaite*, just like *Blake*, is inapposite.

We briefly address Petitioners' remaining arguments. They contend that the circuit court flagrantly abused its discretion because it granted the State's motion to disqualify Mr. Riddell before discovery. This argument overlooks that Rule 44(c) requires a trial court to inquire promptly into potential conflicts of interests in cases of joint representation as well as the purpose of the rule: to avoid "the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to the effective assistance of counsel."[39] That is why, at least in the context of multiple representation, a circuit court "must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant . . . in the murk[y] pre-trial context when relationships between parties are seen through a glass, darkly."[40] So, based on the particular facts of this case, we conclude that the circuit court committed neither a clear

---

[38] Syl. Pt. 6, in part, *Cole*, 180 W. Va. at 393, 376 S.E.2d at 599.

[39] Fed. R. Crim. P. 44, 1979 Cmt.

[40] *Wheat*, 486 U.S. at 162.

error of law nor a flagrant abuse of its discretion by granting the State's motion to disqualify Mr. Riddell before the parties engaged in discovery.

Finally, Petitioners assert that the circuit court erred when it disqualified Mr. Riddell from representing all three of them, rather than taking a less drastic measure. Rule 44(c) does not specify what particular measures a court must take to preserve a criminal defendant's right to the effective assistance of counsel. Rather, the 1979 commentary to the rule's federal counterpart, Federal Rule of Criminal Procedure 44(c), states that "[i]t is appropriate to leave this within the court's discretion, for the measures which will best protect each defendant's right to counsel may well vary from case to case." In this case, the circuit court observed that it was very likely that Petitioners had shared information with Mr. Riddell because he had represented them for some time. The court reasoned that if it permitted Mr. Riddell to continue to represent even one Petitioner, an onlooker might question the fairness of the proceedings because Mr. Riddell had been privy to conversations with the others. "[C]ourts have an independent interest in ensuring that criminal trials . . . appear fair to all who observe them."[41] Therefore, we do not find that the circuit court flagrantly abused its discretion by disqualifying Mr. Riddell from this criminal proceeding, entirely.

---

[41] *Wheat*, 486 U.S. at 160.

## IV. CONCLUSION

In sum, Petitioners have not shown that the circuit court's order of December 11, 2019 disqualifying Mr. Riddell from representing them further in their criminal cases is either a clear error of law or a flagrant abuse of the circuit court's discretion. Accordingly, we deny the requested writ.

Writ denied.